IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CARL WAYNE BUNTION**, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-1104 |
| | § | *CAPITAL CASE* |
| **BOBBY LUMPKIN**, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| | § | |
| Respondent. | § | |

_____

_____

**Petition for a Writ of Habeas Corpus**
_____

**This is a death penalty case.**

**Mr. Buntion is scheduled to be executed on April 21, 2022.**

David R. Dow
Texas Bar No. 06064900
Jeffrey R. Newberry
Texas Bar No. 24060966
University of Houston Law Center
4170 Martin Luther King, Blvd.
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (713) 743-2131

*Counsel to Carl Wayne Buntion*

# Table of Contents

Table of Contents…………… ....................................................................... 2

Index of Authorities…………… ................................................................. 4

Table of Exhibits…………… ....................................................................... 8

Petition for a Writ of Habeas Corpus ........................................................ 9

Introduction………………… ..................................................................... 9

Jurisdiction……………………… ............................................................. 12

Prior Proceedings………………… .......................................................... 16

      A.    1991 trial and appeals ............................................................ 16

      B.    Subsequent state habeas proceeding ..................................... 22

      C.    2012 retrial and subsequent appeals ..................................... 22

Claims for Relief………………… ............................................................ 27

I.    Buntion's death sentence is arbitrary, in violation of the Eighth and Fourteenth Amendments to the United States Constitution, because the punishment is based on the jury's unreliable speculation about his future behavior, which has subsequently been proved false ....................................................... 27

      A.    Evidence demonstrates that Buntion's jury was wrong. ..... 27

      B.    This claim is neither second nor successive, and it is exhausted. .............................................................................. 30

II.     Buntion's execution would violate the Eighth Amendment
        because no legitimate purpose for the death penalty would
        be served by carrying out his execution after he has spent
        over thirty-one years under a sentence of death. .......................... 33

        A.      Buntion's execution would run afoul of the Eighth
                Amendment. ............................................................. 33

        B.      This claim is neither second nor successive, and it is
                exhausted. .............................................................. 39

Conclusion and Prayer for Relief............................................................. 42

Verification...................................................................................... 43

Certificate of Service........................................................................... 43

# Index of Authorities

## Cases

*Allen v. Ornoski,*
    435 F.3d 946 (9th Cir. 2006)........................................................ 15

*Barr v. Purkey,*
    140 S. Ct. 2594 (2020) ......................................................... 34, 37

*Buntion v. Dretke,*
    No. 4:04-cv-01328 (S.D. Tex. Apr. 28, 2006)................................ 21

*Buntion v. Lumpkin,*
    982 F.3d 945 (5th Cir. 2020)........................................................ 25

*Buntion v. Quarterman,*
    555 U.S. 1176 (2009) ................................................................... 21

*Buntion v. Quarterman,*
    524 F.3d 664 (5th Cir. 2008)........................................................ 21

*Buntion v. State,*
    482 S.W.3d 58 (Tex. Crim. App. 2016).......................................... 24

*Buntion v. State,*
    No. AP-71,238, 1995 Tex. Crim. App. Unpub. LEXIS 2 (Tex.
    Crim. App. May 31, 1995)............................................................. 19

*Buntion v. Texas,*
    136 S. Ct. 2521 (2016) ................................................................. 24

*Coble v. Quarterman,*
    496 F.3d 430 (5th Cir. 2007)........................................................ 21

*Conner v. Sellers,*
    136 S. Ct. 2440 (2016) ................................................................. 34

*Ellege v. Florida*,
    119 S. Ct. 366 (1988) ................................................................. 37-38

*Ex parte Buntion*,
    No. WR-22,548-05 (Tex. Crim. App. Mar. 30, 2022) ............... 32, 40

*Ex parte Buntion*,
    No. WR-22,548-04 (Tex. Crim. App. June 7, 2017)........................ 25

*Ex parte Buntion*,
    No. AP-76,236, 2009 WL 3154909 (Tex. Crim. App. Sept. 30,
    2009)……………………….……. ......................................................... 22

*Ex parte Buntion*,
    No. WR-22,548-02 (Tex. Crim. App. Nov. 5, 2003) ........................ 20

*Ex parte Campbell*,
    226 S.W.3d 418 (Tex. Crim. App. 2007)................................... 32, 40

*Ford v. Wainwright*,
    477 U.S. 399 (1986) ......................................................................... 13

*Foster v. Florida*,
    123 S. Ct. 470 (2002) ...................................................................... 38

*Furman v. Georgia*,
    408 U.S. 238 (1972) ................................................................... 35-36

*Glossip v. Gross*,
    576 U.S. 864 (2015) .................................................................. 37, 39

*Gregg v. Georgia*,
    428 U.S. 153 (1976) ........................................................................ 35

*In re Davila*,
    888 F.3d 179 (5th Cir. 2018).......................................................... 33

*In re Medley,*
    134 U.S. 160 (1890) ................................................................ 10, 39

*Johnson v. Mississippi,*
    486 U.S. 578 (1988) ................................................................ 29-30

*Jordan v. Mississippi,*
    138 S. Ct. 2567 (2018) ..................................................................... 34

*Lackey v. Texas,*
    514 U.S. 1045 (1995) ........................................................ 15, 34-35

*Panetti v. Quarterman,*
    551 U.S. 930 (2007) ................................................................ 13-15

*Penry v. Johnson* (*Penry II*),
    532 U.S. 782 (2001) ......................................................................... 20

*Penry v. Lynaugh* (*Penry I*),
    492 U.S. 302 (1989) ......................................................................... 17

*Rocha v. Thaler,*
    626 F.3d 815 (5th Cir. 2010) ......................................................... 33

*Slack v. McDaniel,*
    529 U.S. 473 (2000) ......................................................................... 13

*Smith v. Arizona,*
    552 U.S. 985 (2007) ......................................................................... 35

*Stewart v. Martinez-Villareal,*
    523 U.S. 637 (1998) ......................................................................... 13

*Thompson v. McNeil,*
    129 S. Ct. 1299 (2009) ..................................................................... 38

*Tompkins v. Sec'y, Dept. of Corrs.,*
    557 F.3d 1257 (9th Cir. 2009)......................................................... 14

*Trop v. Dulles,*
    356 U.S. 86 (1958) ............................................................. 36

*United States v. Bernard,*
    820 F. App'x 309 (5th Cir. 2020) ...................................... 14

*Valle v. Florida,*
    132 S. Ct. 1 (2011) ........................................................... 35

## Rules and statutes

28 U.S.C. § 2241..................................................................... 12

28 U.S.C. § 2244.................. ................................................... 13

28 U.S.C. § 2254......................................................... 12-13

Tex. Code Crim. Proc. art. 11.071 .......................................... 31

Tex. Code Crim. Proc. art. 37.0711 ............................... 17, 23-24

## Other authority

Dwight Aarons, *Can Inordinate Delay Between a Death Sentence
and Execution Constitute Cruel and Unusual Punishment?*, 29
Seton Hall L. Rev. 147 (1998)...................................... 15-16

## Table of Exhibits

Exhibit 1          Buntion's disciplinary records

Exhibit 2          Excerpt of Buntion's medical records

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CARL WAYNE BUNTION**, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | *CAPITAL CASE* |
| **BOBBY LUMPKIN**, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| | § | |
| Respondent. | § | |

_____

_____

**Petition for a Writ of Habeas Corpus**
_____

**This is a death penalty case.**

**Mr. Buntion is scheduled to be executed on April 21, 2022.**

## Introduction

This Petition raises two claims. While resembling other claims brought in the course of this litigation, the claims asserted here rest on new facts not previously in existence (and therefore not previously discoverable). Consequently, neither claim presented here (as is

discussed more fully below) is "second or successive" within the meaning of 28 U.S.C. § 2244(b).

Petitioner Carl Wayne Buntion was sentenced to death on January 24, 1991. Not until January 4, 2022 – three weeks shy of thirty-one years later – did the trial court enter an order scheduling Buntion to be executed on April 21, 2022. Buntion has lived under a threat of execution – "one of the most horrible feelings to which [a person] can be subjected" – for thirty-one years. *In re Medley*, 134 U.S. 160, 172 (1890).

Buntion is not responsible for this delay. He has not filed repetitive, frivolous, or otherwise illegitimate filings to delay his execution. The blame for his lengthy incarceration lies entirely on the State. Beginning before his 1991 trial, Buntion argued that the instructions the trial court provided to his jurors did not give the jurors a means by which they could consider mitigating evidence. Buntion continued to press his meritorious claim until finally, in 2009, nearly two decades later, the Texas Court of Criminal Appeals ("CCA") agreed that the trial court's instructions were inadequate and that Buntion's resulting death sentence was unconstitutional. Not until 2012 – more

than two decades after Buntion had first requested a sentencing proceeding that complied with constitutional mandates – did Buntion receive a sentencing hearing free of the error he had identified twenty-one years earlier.

Simply put, for at least twenty-one of the thirty-one years Buntion has resided on death row, the State unconstitutionally subjected him to live under "one of the most horrible feelings to which [a person] can be subjected." For half of those twenty-one years, the State kept Buntion isolated in a cell by himself for twenty-three hours a day.

Buntion is responsible for the death Houston Police Officer James Irby and deserved to be punished severely for that crime. Buntion has been so punished. Having lived under a sentence of death for over three decades in a state which keeps its death-row prisoners in solitary confinement, Buntion has been punished to a degree exceeding that inflicted on anyone else outside of a very small number of death-row prisoners. Buntion has suffered in various ways during his time on death row. On top of the invisible emotional trauma, his body is essentially breaking down, as documented in the medical records included with this Petition. Importantly for purposes of one claim raised

11

in this Petition, Buntion is an old man who, besides not having injured anyone during his three-decade stay on death row, is now physically incapable of harming anyone, in prison or out.

A sentencing jury in 1991, and another in 2012, believed Buntion would be dangerous if not executed. Time has revealed that belief to be false. In over three decades, Buntion has been cited only once for any act of violence during his lengthy incarceration: in 1999, he was cited for hitting another inmate with his fist. Buntion has not been cited for a single disciplinary infraction in the twenty-three years that have passed since he was cited for this offense.

Petitioner Carl Wayne Buntion respectfully asks this Court to stay his execution, scheduled for April 21, 2022; issue a writ of habeas corpus; find his execution after such a long incarceration would violate the Eighth Amendment's prohibition of cruel and unusual punishment; and grant him relief from his unconstitutional death sentence.

## Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 2241(d) because Buntion was convicted in the 178th District Court in Harris County, Texas. Subject matter jurisdiction is conferred by 28 U.S.C. §

2254. Buntion's instant habeas petition is not a second or successive

petition, and this Court accordingly has jurisdiction to entertain it

without prior authorization from the United States Court of Appeals for

the Fifth Circuit. *See* 28 U.S.C. § 2244(b).

While AEDPA prohibits the filing of "second or successive"

petitions unless they meet a narrow set of exceptions, the Supreme

Court has held that the phrase "second or successive" is "a term of art,"

not a mere mathematical computation. 28 U.S.C. § 2244(b); *Slack v.

McDaniel*, 529 U.S. 473, 486 (2000); *see Panetti v. Quarterman*, 551 U.S.

930, 944-46 (2007); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 643-45

(1998). For example, a second-in-time petition raising a claim that a

petitioner is not competent to be executed (i.e., a *Ford*[1] claim) brought

when the claim is first ripe is not subject to the bar on successive

applications. *Panetti*, 551 U.S. at 947. The Supreme Court and the

Court of Appeals for the Fifth Circuit have both recognized that a *Ford*

claim is not ripe until a date is set because the factual predicate for the

claim (i.e., the petitioner's mental state at the time of execution) does

not exist until after his execution is scheduled. *Panetti v. Quarterman*,

---

[1] *Ford v. Wainwright*, 477 U.S. 399 (1986).

551 U.S. 930, 944-45 (2007); *United States v. Bernard*, 820 F. App'x 309, 310-11 (5th Cir. 2020*); see also Tompkins v. Sec'y, Dept. of Corrs.*, 557 F.3d 1257, 1260 (11th Cir. 2009). As such, a claim that a petitioner is not competent to be executed can be presented in a second-in-time petition without authorization from the court of appeals because it is not "second or successive" within the scope of section 2244(b).

Similar to a *Ford* claim, the factual predicates of the two claims raised in this petition did not become available until the trial court entered its order scheduling Buntion to be executed on April 21, 2022. The first claim presented below is that Buntion's death sentence is arbitrary because the jury's finding that he would be a future danger – without which Buntion would not have been eligible for a death sentence – is unreliable and has proved to be incorrect. Whether the jury's finding was, in fact, incorrect could not be measured until an execution date was set. Had Buntion engaged in some violent act in prison as late as December 2021, notwithstanding his impeccable disciplinary history to that point, Buntion could not successfully argue the jury was wrong. Just as an inmate's mental state regarding whether he is competent to be executed cannot be ascertained until

14

after his execution has been scheduled, the veracity of a jury's future dangerousness prediction cannot be ascertained until after an execution date is set. Accordingly, this claim was not ripe until the January 4 order setting Buntion's execution was entered. *See Panetti*, 551 U.S. at 947.

The second claim raised herein, referred to as a *Lackey*[2] claim, asserts no legitimate purpose would be served by executing Buntion now because of the exceptionally long period of time he has been incarcerated under a sentence of death. The factual predicate for this claim is the amount of time Buntion was incarcerated under a sentence of death before his execution was scheduled. That predicate was necessarily unavailable until the trial court issued its order setting Buntion's execution for April 21. For that reason, this claim did not become ripe until the order scheduling Buntion to be executed was entered. *See id.*[3]

---

[2] *Lackey v. Texas*, 514 U.S. 1045 (1995).

[3] *But see Allen v. Ornoski*, 435 F.3d 946, 958 (9th Cir. 2006). The Ninth Circuit has held that a *Lackey* claim – which argues someone cannot be executed because he has, through no fault of his own, been held on death row for too long – is somehow ripe for adjudication in an initial habeas petition. *Id*. The Fifth Circuit has not arrived at a similarly perverse conclusion regarding such claims. *See generally* Dwight Aarons, Can Inordinate Delay Between a Death Sentence and Execution

Accordingly, this Court should find it has jurisdiction over this Petition because it is not a "second or successive" petition, within the meaning of section 2244.

## Prior Proceedings

### A.     1991 trial and appeals

On June 28, 1990, Buntion was indicted for intentionally and knowingly causing the death of Houston Police Officer James Irby. I Tr. 5.[4] Pretrial publicity was extensive in the Houston area, and, as a result, Judge William Harmon ordered the trial be convened in Gillespie County. *Id.* at 53. Guilt phase proceedings commenced on January 14, 1991, and the jury subsequently found Buntion guilty of capital murder on January 17. 61 S.F. 945.

The punishment phase commenced on January 21. At the conclusion of the punishment phase proceedings, the court charged the jury with answering two special issues, the answers to which would

---

Constitute Cruel and Unusual Punishment?, 29 Seton Hall L. Rev. 147, 207 (1998) (noting "[i]nordinate delay claims should be ripe for review only after the inmate has been under a sentence of death for twice as long as the national average of time spent on death row").

[4] Citations to the Clerk's Record of Buntion's 1991 trial appear in this pleading as [volume number] Tr. [page number]. Citations to the Reporter's Record of Buntion's 1991 trial appear herein as [volume number] S.F. [page number].

determine whether Buntion would be sentenced to death or life in prison. 64 S.F. 530; I Tr. 355-58. The first special issue was whether Buntion's conduct that caused the death of Officer Irby was "committed deliberately and with the reasonable expectation that the death of the deceased or another would result." I Tr. 355; *see also* Tex. Code Crim. Proc. art. 37.0711, § 3(b)(1). The second special issue asked the jury to determine whether there was "a probability that . . . Buntion would commit criminal acts of violence that would constitute a continuing threat to society." I Tr. 357; *see also* Tex. Code Crim. Proc. art. 37.0711, § 3(b)(2).

More than a year before Buntion's trial – that is, more than a year before the trial judge charged the jury in Buntion's case – the Supreme Court had ruled, in another case from Texas, that neither of the special issues then-specified by Texas law required or even permitted the jury to consider mitigating evidence. *See Penry v. Lynaugh* (*Penry I*), 492 U.S. 302, 328 (1989). To that extent, the Texas death penalty statute was unconstitutional. However, rather than instructing the jury in Buntion's case to answer a question related to mitigating evidence, the trial court simply told the jurors to consider mitigating evidence while

deliberating on the two special issues and, if they found that a life sentence was appropriate, then they should answer one of the two special issues with a "no" regardless of what they otherwise believed the answer to the special issue should be. I Tr. 353-54.

Buntion's attorneys had anticipated the trial court would give the jury this so-called nullification instruction rather than do what it should have done pursuant *Penry I* – i.e., ask the jurors to decide a separate special issue pertaining to mitigating evidence – and for that reason, on November 4, 1990 (over two months before Buntion's trial commenced), the attorneys filed a motion that asked the trial court to include a special issue that would have expressly required the jury to consider mitigating evidence. I Tr. 196-97. The trial court did not immediately act on the motion but instead denied it near the end of the punishment phase of Buntion's trial. 14 S.F. 6; 63 S.F. 488-89. On January 24, 1991, the jury returned with "yes" answers to both the deliberateness special issue and the future dangerousness special issue, and Buntion was sentenced to death. I Tr. 355-58; 64 S.F. 618-22.

Buntion then appealed his conviction and sentence to the CCA. Two of the claims Buntion raised on direct appeal – i.e., points of error

49 and 62 – pertained the trial court's denying his motion that asked
the trial court to include a special issue pertaining to mitigation.
*Buntion v. State*, No. 71,238, 1995 Tex. Crim. App. Unpub. LEXIS 2, at
*60-61 (Tex. Crim. App. May 31, 1995). In denying relief on these
claims, the CCA wrote that the jurors could have given "proper effect" to
mitigation by answering "no" to the future dangerousness question. *Id.*
That court affirmed Buntion's conviction and sentence on May 31, 1995.

Buntion filed his initial state application for a writ of habeas and
on March 31, 1997. SHCR-2 182.[5] The forty-seventh, fifty-seventh, and
fifty-eighth claims raised in the application asked the state habeas
court to reverse Buntion's death sentence because the jurors were not
able to give effect to the mitigating evidence presented at trial, because
the trial court denied Buntion's request for a special issue that would
specifically address mitigation. SHCR-2 134-36, 162-63. The trial court
issued its Findings of Fact and Conclusions of Law on September 29,
2003. Supp. SHCR-2 69. Two years before the trial court entered its
findings, on June 4, 2001, the Supreme Court issued its opinion in

---

[5] Citations to the State Habeas Clerk's Record of Buntion's initial state
habeas proceeding, No. WR-22,548-02, appear in this pleading at SHCR-2 [page
number]. Citations to the Supplemental volume of the record appear herein as
Supp. SHCR-2 [page number].

*Penry v. Johnson* (*Penry II*), 532 U.S. 782 (2001). In *Penry II*, the

Supreme Court made clear that any belief that its mandate in *Penry I*

was satisfied by a nullification instruction was "objectively

unreasonable." *Penry II*, 532 U.S. at 803-04.

In light of *Penry II*, therefore, it was unmistakably clear that

Buntion was entitled to relief on his claims. The trial court, however,

found that Buntion's claims should not "be considered in the instant

writ proceeding" because the CCA had denied Buntion relief on related

claims on direct appeal. Supp. SHCR-2 64, para. 37. The CCA adopted

the trial court's findings and conclusions in denying Buntion relief on

November 5, 2003. *Ex parte Buntion*, No. WR-22,548-02, 2003 Tex.

Crim. App. Unpub. LEXIS 9, at *1 (Tex. Crim. App. Nov. 5, 2003).

Buntion then sought federal review of his conviction and sentence,

filing his amended petition for a writ of habeas corpus in this Court on

December 30, 2004. *Buntion v. Dretke*, No. 4:04-cv-01328 (S.D. Tex. Dec.

30, 2004), ECF No. 23. Buntion's then-counsel raised thirty-eight claims

for relief. The twenty-forth claim was that Article 37.071 of the Texas

Code of Criminal Procedure is unconstitutional as applied to Buntion's

case because it failed to allow his jurors to give effect to mitigating

evidence. *Id.* at 96-98. With respect to this claim, this Court found Buntion was not entitled to relief because, notwithstanding the nullification instruction, the jury was able to give *sufficient effect* to the mitigating evidence he presented at trial. *Buntion v. Dretke*, No. 4:04-cv-01328, 2006 WL 8453025, at *27-28 (S.D. Tex. Apr. 28, 2006). This Court's opinion relied on a March 22, 2006 decision from the United States Court of Appeals for the Fifth Circuit from Billie Coble's case. *Buntion*, 2006 WL 8453025, at *27-28. That opinion was subsequently withdrawn in light of the Supreme Court's opinions in *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007), and *Brewer v. Quarterman*, 550 U.S. 286 (2007), in which the Supreme Court made clear that a jury must be able to give *full effect*, and not merely *sufficient effect*, to mitigating evidence. *Coble v. Quarterman*, 496 F.3d 430, 433 (5th Cir. 2007).[6]

---

[6] This Court did grant Buntion relief on his claims related to the trial court's bias, claims which made up a large part of the habeas petition. *Buntion*, 2006 WL 8453025, at *24. However, following the government's appeal, the court of appeals vacated the portion of this Court's order granting Buntion relief. *Buntion v. Quarterman*, 524 F.3d 664, 671 (5th Cir. 2008). The Supreme Court denied Buntion's Petition for a Writ of Certiorari on February 23, 2009. *Buntion v. Quarterman*, 555 U.S. 1176 (2009).

## B.    Subsequent state habeas proceeding

Less than five months after his initial federal habeas proceeding concluded, on July 14, 2009, Buntion raised a claim pursuant to *Penry II* in the state habeas court. SHCR-3 22.[7] On September 30, 2009, the CCA held the "nullification instruction given to [Buntion's] jury was not a sufficient vehicle to allow jurors to give meaningful effect to the mitigating evidence presented" at his 1991 trial and remanded his case to the trial court for a new punishment hearing. *Ex parte Buntion*, No. AP-76,236, 2009 WL 3154909, at *2 (Tex. Crim. App. Sept. 30, 2009). As explained above, Buntion had, by this point, argued for almost nineteen years that the nullification instruction was not adequate.

## C.    2012 retrial and subsequent appeals

The new punishment phase proceeding ordered by the CCA commenced on February 21, 2012. The mitigation case put on by trial counsel was remarkably thin – not necessarily because there was no mitigation case to be had, but because the passage of time had made it impossible to adequately investigate and present the mitigating

---

[7] Citations to the State Habeas Clerk's Record of Buntion's subsequent state habeas proceeding, in which he raised a claim pursuant to *Penry II*, i.e., No. WR-22,548-03, appear in this pleading as SHCR-3 [page number].

evidence. During the twenty-one years that passed between Buntion's first and second trials (a period during which he was being held under an unconstitutional sentence), life history records were destroyed and crucial witnesses either died or became otherwise unavailable.

At the conclusion of the evidence, the trial court charged the jury. At this trial, the jury had to answer four special issues. The first question, which was also asked of his 1991 jury, was whether Buntion had acted deliberately in killing Officer Irby. Tex. Code Crim. Proc. art. 37.0711, § 2(b)(1). The second special issue the jury addressed was the so-called future dangerousness special issue, which asks the jury to determine whether the evidence had demonstrated "beyond a reasonable doubt there is a probability that [Buntion] would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. art. 37.0711, § 2(b)(2). The third special issue asked the jury to determine whether Buntion's action was an unreasonable response to any provocation by Officer Irby. Tex. Code Crim. Proc. art. 37.0711, § 2(b)(3). Finally, addressing the error which led to Buntion's being retried, the fourth special issue asked the jury whether "there is a sufficient mitigating circumstance or circumstances

to warrant that a sentence of life imprisonment rather than a death sentence be imposed." Tex. Code Crim. Proc. art. 37.0711, § 2(e). On March 6, 2012, the jury returned answers to each of the four special issues, finding that Buntion had acted deliberately, would commit future acts of violence, had acted unreasonably in response to any provocation from Officer Irby, and that there were not sufficient mitigating circumstances to warrant sentencing Buntion to life in prison instead of the death. Accordingly, on March 6, 2012, Buntion was again sentenced to death. 45 R.R. 38.[8]

The CCA affirmed his sentence on January 27, 2016. *Buntion v. State*, 482 S.W.3d 58 (Tex. Crim. App. 2016). His case became final when the Supreme Court denied his petition for a writ of certiorari on June 27, 2016. *Buntion v. Texas*, 136 S. Ct. 2521 (2016).

On September 25, 2014, Buntion filed a state habeas application pursuant to Article 11.071. The trial court entered its findings of fact and conclusions of law recommending relief be denied on December 28, 2016. State's Proposed Findings of Fact, Conclusions of Law & Order,

---

[8] Citations to the Reporter's Record Buntion's second trial—*State v. Buntion*, No. 588227 (178th Dist. Ct., Harris County, Tex. Mar. 6, 2012)—are cited herein as [volume number] R.R. [page number].

*Ex parte Buntion*, No. 588227-C (178th Dist. Ct., Harris County, Tex. Aug. 30, 2016). Based on the trial court's findings and conclusions and its own review, the CCA denied Buntion relief on June 7, 2017. *Ex parte Buntion*, No. WR-22,548-04, 2017 WL 2464716 (Tex. Crim. App. June 7, 2017).

This Court appointed Undersigned Counsel to represent Buntion in his federal habeas proceeding on September 18, 2017. Order, *Buntion v. Davis*, No. 4:17-cv-02683 (S.D. Tex. Sept. 18, 2017), ECF No. 2. Counsel filed Buntion's federal habeas petition on June 7, 2018. This Court entered an order denying Buntion relief and a certificate of appealability. Mem. & Order, *Buntion v. Lumpkin*, No. 4:17-cv-02683 (S.D. Tex. Mar. 5, 2020), ECF No. 26. On appeal, the United States Court of Appeals for the Fifth Circuit agreed that Buntion was not entitled to a certificate of appealability on any of his claims. *Buntion v. Lumpkin*, 982 F.3d 945, 953 (5th Cir. 2020). The Supreme Court subsequently denied his Petition for Writ of Certiorari on October 4, 2021.

The day after the Supreme Court denied certiorari, the District Attorney's Office informed Counsel it intended to ask the trial court to

set an execution date for Mr. Buntion. Believing the claims contained in

this Petition would be ripe once a date was set, Counsel immediately

began working on a habeas application to file in the state courts.

Counsel filed the application on December 8, 2021 – almost a full month

before the trial court entered its January 4 order scheduling Buntion to

be executed, at which time the claims became ripe. The CCA did not act

on the application immediately, or even soon after a date was set.

Instead the CCA waited until March 30, 2022 – almost four months

after Counsel filed the application and only three weeks before Buntion

is scheduled to be executed – to enter its order dismissing the

application. As explained below, although that order claims it involved

no consideration of the merits of Buntion's claims, this Court should

find that, given the CCA's own jurisprudence on this issue, the order

indicates that court believed Buntion did not present a prima facie case

that his rights were violated, which, in fact, necessarily does involve a

consideration of the merits of his claims.

## Claims for Relief

**I.    Buntion's death sentence is arbitrary, in violation of the Eighth and Fourteenth Amendments to the United States Constitution, because the punishment is based on the jury's unreliable speculation about his future behavior, which has subsequently been proved false.**

### A.    Evidence demonstrates that Buntion's jury was wrong.

In his original habeas petition, Buntion argued that predictions of future dangerousness are inherently unreliable. *See* Petition at 92-100, *Buntion v. Davis*, No. 4:17-cv-02683 (S.D. Tex. June 7, 2018), ECF No. 4. His claim in this Petition is different: Buntion argues here that the prediction of future dangerousness in his case has proved false. This claim rests on facts that did not exist until an execution date was set: Until a date was set, the State could have argued (and, indeed, did argue) that Buntion might still commit an act of violence. However, with an execution date now imminent, the State cannot argue that Buntion might, at some point down the indefinite road, commit an act of violence that would vindicate the jury's prediction. We are therefore now able to say with confidence that the predicate for answering this special issue in the affirmative in Buntion's particular case is false.

During the thirty-one years Buntion has been incarcerated under a sentence of death, he has been cited for only three disciplinary infractions; and he has not been cited for any infraction at all since the 2012 jury found he would probably commit violent acts in the future. Exhibit 1 (Buntion's disciplinary records). Even prior to 2012, his disciplinary infractions were almost entirely nonviolent. Thus, Buntion was cited for having excessive towels, shorts, socks, and sheets in May 1996. On September 20, 1997, Buntion refused to be stripped searched. Finally, on January 9, 1999, he was cited for hitting another inmate with his closed fist. The 1999 incident constitutes the sole violent act for which Buntion has been cited during his thirty-one years on death row, and this single act occurred thirteen years before his 2012 retrial. Buntion has been cited for no disciplinary infractions since 1999.

Furthermore, during the twenty-three years that have passed since the 1999 incident, Buntion has developed ailments which make it even more fanciful to suggest he will engage in any violent acts in the future. For example, since around 2015, Buntion has experienced sciatic nerve pain in his back, hip, and left leg that makes it difficult for him to

walk. Exhibit 2 (excerpt of Buntion's medical records) at 12, 22, 23-24.[9]
The pain has at times been so bad that he has been rendered unable to
walk to the shower without falling. Exhibit 2 at 22. At times, he has
required the use of a wheelchair. Exhibit 2 at 1-2. Since 2016, he has
had periarthritis in his right wrist which is so severe that he cannot be
handcuffed with a single set of cuffs and must be double-cuffed. Exhibit
2 at 3, 10, 17-19. For the last several years he has experienced vertigo
that is so severe that he cannot be housed in a cell which is not on the
ground floor. Exhibit 2 at 13, 15. Last year, he was diagnosed with
cirrhosis. Exhibit 2 at 17. He was diagnosed with Hepatitis C in 2020.
*Id.*

In *Johnson v. Mississippi*, 486 U.S. 578 (1988), a Mississippi jury
sentenced Johnson to death after finding as an aggravating
circumstance that Johnson had been previously convicted in another
case. That prior conviction was subsequently reversed. The Supreme
Court therefore held that Johnson's death sentence – which was based
on that prior conviction – also had to be vacated, because the predicate

---

[9] Should the Court prefer, Counsel would be happy to provide it with a copy
of all 2,426 pages of Buntion's UTMB records, all of which pertain to his
incarceration on death row.

for the death sentence had been undermined. *Johnson* establishes that

when developments subsequent to the imposition of a death sentence

reveal that sentence to have been "predicated, in part," on an invalid

assumption, that death sentence is unreliable and arbitrary, and hence

impermissible under the Eighth Amendment. *Id.* at 585 & n.6. As was

true for Johnson, Buntion's death sentence is also predicated on an

assessment that has proved to be mistaken. The jury at his 2012 trial

found he would commit acts of violence in the future. That finding has

proved false. Buntion has not been cited for a single disciplinary

infraction since long before his 2012 sentencing trial.

## B. This claim is neither second nor successive, and it is exhausted.

As is also true of the second claim raised in this Petition, Buntion

presented this claim to the state habeas court in the application filed by

Counsel on December 8, 2021. The factual basis for this claim is

Buntion's disciplinary history (or lack thereof) since the jurors at his

2012 trial found he would likely commit dangerous acts in the future.

As Buntion argued in the state habeas court (and as is explained in

greater detail above in the section pertaining to jurisdiction), because

the claim is necessarily based on Buntion's behavior from the date he

was incarcerated up until the time his execution is carried out, the claim did not become available until an execution date was set.

Because the factual basis for Buntion's claim was not previously available, the CCA should have authorized the claim if it believed the claim satisfied section 5(a)(1) of Article 11.071 of the Texas Code of Criminal Procedure. According to the plain language of section 5(a)(1), the CCA should have authorized the trial court to consider the merits of Buntion's claim if it found the claim "could not have been presented previously . . . because the factual . . . basis for the claim was unavailable on the date [Buntion] filed his previous application." Tex. Code Crim. Proc. art. 11.071, § 5(a)(1). In view of this clear language in the statute, the CCA's March 30 Order dismissing Buntion's application appears to be perplexing.

However, the basis for the decision becomes clear once it is understood that, as the CCA itself has explained, that court also considers a claim's merits when determining whether it satisfies section 5(a)(1). Specifically, that court asks two questions when determining whether a claim satisfies section 5(a)(1): first, the CCA asks whether the factual basis for the claim was previously unavailable; and second,

the court asks whether, if established, the alleged facts "would constitute a constitutional violation that would likely require relief from either the conviction or sentence." *Ex parte Campbell*, 226 S.W.3d 418, 421 (Tex. Crim. App. 2007). A simpler way of stating the second step is that the CCA, after determining the factual predicate for a claim was previously unavailable, proceeds to determine whether the applicant has made a "prima facie showing" that his rights were violated. *Id.* at 422.

In its March 30 Order dismissing Buntion's claims,[10] the CCA wrote that it had found that Buntion "failed to satisfy the requirements of Article 11.071, § 5(a)" and that it dismissed his application "as an abuse of the writ without considering the claims' merits." *Ex parte Buntion*, No. WR-22,548-05 (Tex. Crim. App. Mar. 30, 2022). The statement that it did not consider the merits of Buntion's claims appears to have been intended to be a signal to the federal courts that the CCA's decision was independent of federal law, but this Court is "not required 'to check [its] common sense at the door when [it] read[s]

---

[10]   It warrants mention that the CCA took nearly four months to issue a decision dismissing Buntion's state court application. That passage of time suggests as well the CCA was examining the merits of the claim, for it would hardly take four months to decide whether the claim was available.

an opinion of the [CCA] with an eye toward ascertaining its decisional basis.'" *In re Da*vila, 888 F.3d 179, 188 (5th Cir. 2018) (*quoting Rocha v. Thaler*, 626 F.3d 815, 837 (5th Cir. 2010)).

Before Counsel filed Buntion's state habeas application on December 8, 2021, Buntion's most recently filed state habeas application was the one filed on September 25, 2014. Only 20 percent of this claim's factual predicate – i.e., Buntion's disciplinary history from 2012 until now – was available at that time. Because of that, the CCA's March 30 Order can mean nothing other than that court believed that Buntion's claim had not satisfied the prima facie case requirement. That decision, notwithstanding what the CCA wrote, involves a consideration of the merits of Buntion's claim. Accordingly, this Court should find the claim to be exhausted.

## II.   Buntion's execution would violate the Eighth Amendment because no legitimate purpose for the death penalty would be served by carrying out his execution after he has spent over thirty-one years under a sentence of death.

### A.   Buntion's execution would run afoul of the Eighth Amendment.

In his original habeas petition, Buntion argued that the Eighth Amendment would not permit his execution because he had, at that

time, been on death row for over a quarter of a century. *See* Petition at

111-14, *Buntion v. Davis*, No. 4:17-cv-02683 (S.D. Tex. June 7, 2018),

ECF No. 4. His claim in this Petition is different. This claim rests on

facts that did not exist until an execution date was set. Specifically, at

that time, the delay was four years less than it is now. Until a date was

set, any speculation about how long Buntion would be incarcerated

under a sentence of death before the State sought to execute him could

not be known. We now know that length of time is thirty-one years.

In his opinion dissenting from the denial of certiorari in *Lackey v.*

*Texas*, 514 U.S. 1045 (1995), Justice Stevens observed that neither of

the two principal purposes for the death penalty—i.e., retribution and

deterrence—is served in the case of a defendant who has spent a

significant period of time under a sentence of death. *Lackey v. Texas*,

514 U.S. 1045, 1045 (1995) (Stevens, J., dissenting from the denial of

certiorari). Since *Lackey*, Justice Breyer has expressed agreement with

Justice Stevens' view. *See, e.g.*, *Barr v. Purkey*, 140 S. Ct. 2594 (2020)

(Breyer, J., dissenting from the order vacating stay); *Jordan v.*

*Mississippi*, 138 S. Ct. 2567 (2018) (Breyer, J., dissenting from the

denial of certiorari); *Conner v. Sellers*, 136 S. Ct. 2440, 2441 (2016)

(Breyer, J., dissenting from the denial of certiorari); *Valle v. Florida*, 564 U.S. 1067 (2011) (Breyer, J., dissenting from the denial of certiorari); *Smith v. Arizona*, 552 U.S. 985 (2007) (Breyer, J., dissenting from the denial of certiorari).

As a defendant's time on death row lengthens, the justification for the imposition of the death penalty weakens, and the Eighth Amendment concerns accordingly grow. *See Lackey*, 514 U.S. at 1045 (suggesting that a 17-year delay in execution would not have been acceptable to the Framers, nor would execution after such delay serve the societal purposes of retribution and deterrence); *see also Gregg v. Georgia*, 428 U.S. 153, 177, 182-83 (1976) (cautioning that any criminal sanction imposed "cannot be so totally without penological justification that it results in the gratuitous infliction of suffering"); *Furman v. Georgia*, 408 U.S. 238, 312 (1972) (White, J., concurring) (noting that when the death penalty ceases to further the social purposes of retribution and deterrence, "its imposition would then be the pointless and needless extinction of life" and the death penalty "would be patently excessive and unusual punishment violative of the Eighth Amendment").

The Eighth Amendment's prohibition on cruel and unusual punishment draws the constitutional line of acceptable punishments at "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958). The death penalty cannot become "the pointless and needless extinction of life with only marginal contributions to any discernible social or public purposes. A penalty with such negligible returns to the State would be patently excessive and cruel and unusual punishment violative of the Eighth Amendment." *Furman*, 408 U.S. at 312.

For over thirty-one years, Buntion has faced the anxiety and uncertainty of a death sentence. For the great majority of this time, that anxiety and uncertainty has resulted solely and entirely from the refusal of the State of Texas to grant Buntion a trial that comports with the Constitution. Having turned seventy-eight one week before this Petition is being filed, Buntion is the oldest person on Texas's death row. *See Inmates on Death Row,* Tex. Dep't of Crim. Just. (July 1, 2021), https://www.tdcj.texas.gov/death_row/dr_offenders_on_dr.html.[11]  Over

---

[11] The TDCJ website lists Buntion's date of birth as March 30, 1940, but he was actually born on March 30, 1944.

this period, Buntion has developed several ailments including arthritis, vertigo, hepatitis, sciatic nerve pain, and cirrhosis. Exhibit 2. With each day that passes, as Buntion grows older and develops more physical ailments, the temporal proximity between the crime for which he was sentenced and his looming execution becomes ever more attenuated.

This delay of three decades undermines the rationale for the death penalty. *Purkey*, 140 S. Ct. at 2595 (Breyer, J., dissenting). As numerous studies have shown, there is insufficient evidence to establish the death penalty has any deterrent effect at all. *Glossip v. Gross*, 576 U.S. 864, 930-31 (2015) (Breyer, J. dissenting). Whatever deterrent effect there is diminished by delay. *Id*. Similarly, the delay of an "execution must play some role in any calculation that leads a community to insist on death as retribution." *Id*. at 933.

Further, an execution after an extraordinarily long delay is especially cruel when the cause of delay is a defendant's meritorious exercise of his constitutional rights. *See Ellege v. Florida*, 119 S. Ct. 366, 366-67 (1988) (Breyer, J., dissenting from the denial of certiorari) (concluding that execution after imprisonment for twenty-three years under a sentence of death may be cruel in light of the fact that the

delays were not because of defendant's frivolous appeals, but rather due, in large part, to his successful litigation). Beginning months before his 1991 trial commenced, Buntion began arguing that the nullification instruction the jurors received did not satisfy the dictates of the Eighth Amendment. Finally, after pursuing that claim for over twenty-one years, in 2012, Buntion received a sentencing trial not encumbered by the error he had been complaining about for so long. The delay in Buntion's case was due to "the State's own faulty procedures and not because of frivolous appeals on his part." *Ellege*, 119 S. Ct. at 367; *see also Thompson v. McNeil*, 129 S. Ct. 1299, 1304 (2009) (Breyer, J., dissenting from the denial of certiorari) ("it is fair, not unfair, to take account of the delay the State caused when it initially refused to allow [Petitioner] to present [mitigating evidence] at the punishment phase of his trial"); *Foster v. Florida*, 123 S. Ct. 470, 472 (2002) (Breyer, J., dissenting from the denial of certiorari) ("The length of this confinement has resulted partly from the State's repeated procedural errors.").

As the Supreme Court observed over a century ago, "when a prisoner sentenced by a court to death is confined in the penitentiary awaiting the execution of the sentence, one of the most horrible feelings

to which he can be subjected during that time is the uncertainty during the whole of it." *In re Medley*, 134 U.S. 160, 172 (1890). For twenty of the thirty-one years he has been on death row, Buntion has been kept in isolation for twenty-three hours a day. "[I]t is well documented that such prolonged solitary confinement produces numerous deleterious harms." *Glossip*, 576 U.S. at 926 (2015) (Breyer, J., dissenting) (citing numerous sources).

Because of the excessively long time he has been incarcerated under a sentence of death and held in solitary confinement, most of which was due to the State's errors, executing Buntion would not serve the purpose of either retribution or deterrence and would therefore run afoul of the Eighth Amendment's prohibition of cruel and unusual punishment.

**B.    This claim is neither second nor successive, and it is exhausted.**

As mentioned above, Buntion presented this claim to the state habeas court in the application filed by Counsel on December 8, 2021. The factual basis for this claim is Buntion's is the length of time – thirty-one years – Buntion has been incarcerated under a sentence of death. As Buntion argued in the state habeas court (and as is explained

in greater detail above in the section pertaining to jurisdiction), because the factual predicate for the claim is the entirety of the length of time Buntion has been incarcerated under a sentence of death, it was not available when Buntion's most recent previous state habeas application was filed in 2014.

Because the factual basis for Buntion's claim was not previously available, the CCA should have authorized the claim if it believed the claim satisfied section 5(a)(1) of Article 11.071 of the Texas Code of Criminal Procedure. As explained above, the CCA's analysis regarding whether a claim satisfies section 5(a)(1) is a two-step process: first, the CCA asks whether the factual basis for the claim was previously unavailable; and second, the court asks whether the applicant has made a prima facie showing that his rights were violated. *Campbell*, 226 S.W.3d at 421-22.

As mentioned above, in its March 30 Order dismissing Buntion's claims, the CCA wrote that it had found that Buntion "failed to satisfy the requirements of Article 11.071, § 5(a)" and that it dismissed his application "as an abuse of the writ without considering the claims' merits." *Ex parte Buntion*, No. WR-22,548-05 (Tex. Crim. App. Mar. 30,

2022). Before Counsel filed Buntion's state habeas application on December 8, 2021, Buntion's most recently filed state habeas application was the one filed on September 25, 2014. Over 25 percent of this claim's factual predicate – i.e., the length of time Buntion has been incarcerated under a sentence of death – was not available at that time. Because of that, the CCA's March 30 Order can mean nothing other than that court believed that Buntion's claim had not satisfied the prima facie case requirement. That decision, notwithstanding what the CCA wrote, involves a consideration of the merits of Buntion's claim. Accordingly, this Court should find the claim to be exhausted.

## Conclusion and Prayer for Relief

WHEREFORE, Petitioner Carl Buntion prays that this Court:

1.   Stay his execution, currently scheduled for April 21, 2022;

2    Issue a writ of habeas corpus to have him brought before it, to the
     end that he may be relieved of his unconstitutional sentence of
     death;

3.   If necessary to resolve disputed factual issues, schedule an
     evidentiary hearing during which Buntion may present evidence
     in support of his claims;

4.   Grant such other relief as law and justice require.

Respectfully submitted,

s/ David R. Dow                          s/ Jeffrey R. Newberry
_____          _____
David R. Dow                             Jeffrey R. Newberry
Texas Bar No. 06064900                   Texas Bar No. 24060966
University of Houston Law Center    University of Houston Law Center
4170 Martin Luther King Blvd.        4170 Martin Luther King Blvd.
Houston, Texas 77204-6060            Houston, Texas 77204-6060
Tel. (713) 743-2171                      Tel. (713) 743-6843
Fax (713) 743-2131                       Fax (713) 743-2131

*Counsel to Carl Wayne Buntion, Petitioner*

## Verification

I, Jeffrey R. Newberry, attorney for Petitioner in the above-entitled action, state that to the best of my knowledge and belief, the facts set forth in this Petition are true.

s/ Jeffrey R. Newberry
_____
Jeffrey R. Newberry

## Certificate of Service

I certify that on Tuesday, April 6, 2022, a copy of the foregoing pleading was electronically served on counsel for Respondent, Cara Hanna and Gwendolyn Vindell, via an email to cara.hanna@oag.texas.gov and gwendolyn.vindell2@oag.texas.gov.

s/ Jeffrey R. Newberry
_____
Jeffrey R. Newberry